UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVERNE RUSH,

          Plaintiff,

                          Case No. 22-CV-12214

vs.

                          HON. GEORGE CARAM STEEH

CHRISTINE WORMOUTH,
Secretary of the Army,

          Defendant.

_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 14)

Plaintiff Laverne Rush, *pro se*, brings this case arising from his

employment with the U.S. Army Tank-Automotive & Armaments Command

(TACOM). Rush alleges that his supervisors discriminated against him by

issuing a suspension, issuing a letter of reprimand, and wrongly denying

his request to record a performance review, because of his race, age,

disability or prior discrimination complaints. In his complaint, Rush alleges

that defendant, the Army, discriminated and retaliated against him in

violation of Title VII of the Civil Rights Act of 1964 and the Age

- 1 -

Discrimination in Employment Act of 1967, and failed to accommodate his
disability in violation of the Americans with Disabilities Act of 1990[1].

The matter is before the Court on defendant's motion for summary
judgment under Fed. R. Civ. P. 56(a). Upon a careful review of the written
submissions, the Court deems it appropriate to render its decision without a
hearing pursuant to Local Rule 7.1(f)(2). For the reasons set forth below,
defendant's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Laverne Rush is a 25-year Army veteran who attained the rank of
First Sergeant. Toward the end of his military service, he served in an
acting capacity as an Operations Sergeant Major. Rush never formally
"billeted" or "frocked" to the rank of Sergeant Major, which is a higher rank
than First Sergeant. Following his military service, Rush has been
employed by the Army since 2016. In May 2020, Rush began working in
TACOM's Military Human Resource Office, which is sometimes referred to
as G-1. He transferred to G-1 as part of a resolution of his allegation of a
hostile work environment in his prior unit.

---

[1] The Court analyzes plaintiff's failure-to-accommodate claim under the Rehabilitation
Act, which is the exclusive remedy for a federal employee alleging disability-based
discrimination. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

Things started out well when Rush first joined G-1. His second-line supervisor, Dr. Valerie Devries, organized a meeting to welcome him to the team. Following the meeting, Rush commented in an email to his superiors that Dr. Devries and the "G-1 family" welcomed him and "[l]ooking at their actions thus far, I see that people are still chivalrous and they can appreciate the dignity and acceptance of other races beyond Caucasian." ECF No. 14-6, PageID.167. Then, at the end of his month-long training at G-1, Rush sent an email to Dr. Devries in which he thanked his coworkers for taking the time to train him and answer his questions. He referred to Spring Kary, Tom Nguyen, and Edwin Bridges, calling special attention to Bridges for going "above and beyond" and "making himself available both day and night" to answer questions. ECF No. 14-3, PageID.130.

In August 2020, Warren Mills became Rush's first-line supervisor. At first, it appeared that Rush had a good relationship with Mills. In a September 2020 email expressing frustration with one of his coworkers, Rush remarked that Mills and Edwin Bridges were the only people on his team who knew how to give compliments. ECF No. 14-8, PageID.182.

1.  Three-day suspension

On September 29, 2020, the G-1 team participated in a training session for a new software program. The training was conducted by Spring Kary, one of Rush's coworkers. For demonstration purposes, Rush used a laptop connected to a projector so the rest of the team could see his screen. When Kary asked Rush to turn to the "profile" tab, Rush's profile stated that he had retired as a Master Sergeant (which is the same rank as First Sergeant). Then, in front of everyone at the training session, Rush attempted to change his rank to Sergeant Major. When he did so, the system displayed a warning asking for verification that the user could submit proof of the new rank. Rush's coworkers testified that he clicked the verification box and attempted to save the change, but the system froze, and the change apparently was not effectuated.

The day after the training, Rush's coworkers Kary, Bridges, and Nguyen submitted signed memoranda to Mills attesting that they had witnessed Rush attempt to change his rank. They also attested that Rush had previously told them he retired as a Sergeant Major. Mills, who was also at the training session, signed a similar memorandum for the record.

About a week after the training, Mills approached Rush to discuss the incident. During the meeting, Rush offered varying explanations of his

retirement rank but eventually stated that, although he served in the role of Operations Sergeant Major, he never formally attained that rank. Mills proposed that Rush be suspended for three days.

As Mills' supervisor, Dr. Devries was the official who would decide whether to adopt the proposed suspension. Rush responded to the proposed suspension in an email to Dr. Devries. Rush stated that he attempted to change his profile to Sergeant Major because he thought his profile "managed the position and NOT the actual status." ECF No. 14-13, PageID.315. He further asserted that when he told coworkers he retired as a Sergeant Major he was "addressing the billet and position and NOT the rank." *Id*. Dr. Devries found this explanation to be lacking because (1) Ms. Kary had asked him during the training whether he had actually attained the rank of Sergeant Major and (2) the system asked for verification that he attained that rank. After consulting with the Army's HR department, Dr. Devries adopted the proposal and suspended Rush for three days without pay.

2. Accommodation for performance review

In January 2021, Mills contacted Rush to schedule his annual performance review. Rush made three requests "due to pending litigation and my memory loss": (1) that a third party be present, (2) that he be

- 5 -

allowed time to take notes, and (3) that he be permitted to record the meeting. Mills responded that he would allow Rush as much time as needed to take notes, that a third party, namely Mr. Branch, could also be present to take notes, but that Rush would not be permitted to record the meeting. Rush objected to Mr. Branch being the third-party recorder because Branch was involved in the EEO complaint that Rush had filed. ECF No. 14-14, PageID.320. Mills ultimately informed Rush that if he did not attend the meeting on January 12, 2021, under the proposed conditions, Mills would send the written review for Rush's signature. Rush declined to attend the meeting. The written review listed Rush's performance as satisfactory and did not contain any specific criticism.

3.  Letter of reprimand

On January 11, 2021, Rush sent an email to Mills and other Army leadership in which he compared the activities of Mills and Dr. Devries to the "thugs and rioters . . . last Wednesday" (the date of the January 6, 2021 Capitol riot).[2] He also stated that Mills had "urinated, discriminated, retalitialed [sic], [and] created continual hostile enviroment [sic]" and had "racist and bias intent". *See* ECF No. 14-15, PageID.330-32. Upon

---

[2] Mr. Rush's January 11, 2021 email has not been provided to the Court. These facts come from the account included in Dr. Devries' Notice of Proposed Suspension, ECF No. 14-15, PageID.330-32, and Mr. Rush's response letter, ECF No. 14-16, PageID.333-35.

receiving this email, Dr. Devries proposed that Rush be suspended for five days without pay for discourtesy towards a supervisor. In a written response, Rush conceded that his comments were harsh and that he should have worded his email differently. ECF No. 14-16, PageID.333-35. After reviewing Rush's email and explanation letter, Dr. Devries' supervisor Annette Riggs reduced the proposed suspension to a letter of reprimand. This letter was in Rush's personnel file for one year, and it no longer appears as part of his record.

In November 2020, Rush filed a formal discrimination complaint with the Army's EEO office. An investigation was conducted, as well as a three-day hearing in which Rush testified and examined witnesses. After considering the record and testimony presented during the hearing, the administrative judge found Rush's claims to be without merit. This lawsuit followed in September 2022.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St.*

*Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l*

*Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

ANALYSIS

I.    Discrimination

Title VII prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff can make a prima facie case of discrimination either by presenting direct evidence of discriminatory actions by the defendant or by showing the existence of circumstantial evidence that creates an inference of discrimination. *Younis*, 610 F.3d at 363. Title VII claims based on circumstantial evidence of discrimination are analyzed under the three-step framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case of discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) he was treated differently than a similarly situated employee outside the protected class. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008). Once a prima facie case is established, the employer must articulate a legitimate non-discriminatory reason for the adverse employment action. *Id*. at 391. If a legitimate reason is articulated, the burden shifts back to the plaintiff to establish the reason is pretext for discrimination. *Id*. at 391-92.

The Age Discrimination in Employment Act (ADEA) prohibits employers from taking adverse employment actions "because of [an] individual's age." 29 U.S.C. § 623(a)(1); § 633a. A plaintiff bringing an ADEA claim "must prove that age was a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 299–30 (6th Cir. 1990)). Where plaintiff relies on circumstantial evidence, courts in this circuit analyze ADEA claims by applying the *McDonnell Douglas* framework outlined above. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

In this case, plaintiff does not present direct evidence of

discrimination, so the Court applies the burden-shifting framework of

*McDonnell Douglas*.

A. <u>Three-day suspension for misrepresenting rank and attempting to change personnel record</u>

Plaintiff alleges that the Army's decision to suspend him for three

days in November 2020, was discriminatory based on his race, color,

national origin, age, disability, gender, religion, or taken in retaliation for

making prior complaints. Defendant challenges plaintiff's ability to establish

the fourth element of his prima facie case, that he was treated differently

than a similarly situated employee outside the protected class.

Plaintiff asserts that he was treated differently than his coworker Tom

Nguyen, who signed a document without proper authorization, that would

have provided plaintiff with access to a computer system. Nguyen was not

suspended for his unauthorized action. Plaintiff's supervisor Mills explained

that contrary to the acts taken by plaintiff for his own benefit, Nguyen was

not suspended because his unauthorized signature did not rise to the level

of the falsification of military records, nor did Nguyen take the action to

benefit himself. EEOC Hearing Transcript, July 26, 2022, 171–73, 195-96.

Because of these differences, Nguyen is not similarly situated to plaintiff for

purposes of making a prima facie case.

Even assuming plaintiff could make a prima facie case, defendant has shown a legitimate nondiscriminatory reason for the suspension. Plaintiff's first-line supervisor witnessed plaintiff attempt to change an official Army record to reflect a rank higher than the one he admittedly attained. Three of plaintiff's coworkers also witnessed the events and submitted signed memoranda attesting to these facts. Plaintiff's second-line supervisor Dr. Devries reviewed the proposed suspension and the witness statements and offered plaintiff a chance to respond. When plaintiff's explanation failed to rebut the clear and consistent statements of his coworkers and first-line supervisor, Dr. Devries adopted the proposed suspension.

Plaintiff's response to the motion for summary judgment does not provide any evidence to support a finding that defendant's legitimate nondiscriminatory reason for imposing the suspension was pretext for discrimination. In this case, Mills and Dr. Devries documented legitimate nondiscriminatory reasons for the suspension such that even without an electronic record showing that plaintiff attempted to change his rank, Devries had a good faith basis to adopt Mills' proposed suspension. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012) ("If an employer has an 'honest belief' in the nondiscriminatory basis upon which it

has made its employment decision (i.e., the adverse action), then the employee will not be able to establish pretext.") (citing *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)).

B. <u>Letter of reprimand for disrespect toward supervisors</u>

Plaintiff contends that the letter of reprimand he was issued for comparing his supervisors to the "thugs" who invaded the Capitol on January 6, 2021, was an adverse employment action. However, the Sixth Circuit has held that a written reprimand is not an adverse employment action to support a prima facie case of discrimination where it "would not have dissuaded a reasonable worker from making a claim of discrimination." *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013); *see, e.g., Creggett v. Jefferson Cnty. Bd. of Educ.,* 491 Fed.Appx. 561, 566, No. 11–6375, 2012 WL 3104508, at *3 (6th Cir. Aug. 1, 2012) ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action."). The letter of reprimand, which remained in plaintiff's employment file for one year and has since been removed, is not an adverse employment action for purposes of making a prima facie case. In addition, plaintiff fails to identify a similarly situated employee outside the protected class that was treated differently.

- 13 -

Even if plaintiff could make a prima facie case regarding the letter of reprimand, the Army had legitimate, nondiscriminatory reasons to issue it. Plaintiff made discourteous comments to his supervisor by email, comparing the actions of his first- and second-line supervisors to thugs and rioters, such as those who participated in the January 6, 2021 attack on the Capitol. Plaintiff's email was unprofessional and disrespectful, and his supervisors engaged in an appropriate, legitimate, and non-discriminatory action to address his comments through the agency disciplinary process. Rush has produced no evidence that the reprimand was pretext for any discriminatory animus.

II.   Retaliation for prior discrimination complaints

Plaintiff alleges that defendant took adverse actions against him because of the discrimination complaint he filed against the Agency. To establish retaliation, plaintiff must prove that (1) he engaged in protected activity, (2) his protected activity was known to the defendant, (3) the defendant then took an adverse employment action against him, and (4) there was a causal connection between his protected activity and the adverse action. *Kirkland v. City of Maryville, Tennessee*, 54 F.4th 901, 910 (6th Cir. 2022).

- 14 -

There is no evidence that Mills knew about plaintiff's prior discrimination complaint against his former unit when he proposed the three-day suspension. Mills testified that he first learned about the prior complaint in October 2020, after the training incident. While Dr. Devries did know about the prior complaint, there is no evidence that she intended to discriminate against him on that basis. On the contrary, plaintiff himself described Devries as supportive and welcoming of plaintiff during his G-1 onboarding.

Defendant has demonstrated legitimate, nondiscriminatory reasons both for suspending plaintiff and for issuing him a letter of reprimand, as discussed above. Plaintiff has not offered any evidence that Mills and Devries took these actions because of his prior protected activity instead of because the well-documented reasons they provided.

III.   Denial of a reasonable accommodation at performance review

Under the Rehabilitation Act, an employer must make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. *See Brumley v. United Parcel Svc., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (citing 42 U.S.C. § 12112(a)). To establish a prima facie failure-to-accommodate claim, a plaintiff must show that (1) he was disabled; (2) he was qualified for the position; (3) the

- 15 -

agency was aware of his disability; (4) an accommodation was needed; and (5) the agency failed to provide the necessary accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997).

"The Rehabilitation Act does not impose a duty to provide every accommodation requested. . . . The plaintiff must first demonstrate that without the requested accommodation, he is unable to perform the essential functions of his job." *Id.* at 1178 (citations omitted). Plaintiff ultimately received his performance appraisal in writing and had an opportunity to challenge anything in it. Attending his performance review in person was not necessary to perform the essential functions of his job.

Furthermore, the Army provided plaintiff with two accommodations to address his claimed disability of memory loss: providing sufficient time for him to take notes during the meeting and allowing a third party to attend the meeting and take notes, which plaintiff could review. The Rehabilitation Act does not entitle a plaintiff to his preferred accommodation when there are multiple reasonable accommodations available. *See Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir.1996) (holding that an employer does not fail to provide a reasonable accommodation when there is more than one accommodation, and the employer chooses "[a] less expensive accommodation" or an "accommodation that is easier to provide"); *Trepka*

*v. Bd. of Educ.*, 28 Fed. Appx. 455, 459 (6th Cir. 2002) (holding that an employer may offer an accommodation other than the one the employee prefers). Here, the accommodations offered by defendant were reasonably calculated to adequately address plaintiff's concern over his memory loss, as well as his desire to document the meeting for his pending litigation.

Plaintiff's prima facie case fails because the agency offered a reasonable accommodation for his disability.

CONCLUSION

Now, therefore, for the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that defendant's motion for summary judgment (ECF No. 14) is GRANTED.

Dated:  November 9, 2023

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 9, 2023, by electronic and/or ordinary mail.

s/Mike Lang
Deputy Clerk